# RIVER BEND ASSOCIATES, INC., ET AL. *v.* PLANNING COMMISSION OF THE TOWN OF SIMSBURY ET AL.
## (SC 17027)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued March 10—officially released September 7, 2004

*Brian R. Smith,* with whom were *Karen A. L. Perry, Matthew G. St. Amand* and, on the brief, *Robert S. Melvin, Robert J. Sitkowski* and *Nathan C. Lampard,* for the appellant (named defendant).

*Timothy S. Hollister,* with whom were *Amy E. Souchuns* and *Matthew Ranelli,* for the appellees (plaintiffs).

*Opinion*

SULLIVAN, C. J. The named defendant, the planning commission of the town of Simsbury (planning commission), appeals from the judgment of the trial court in favor of the plaintiffs, River Bend Associates, Inc., Griffin Land and Nurseries, Inc. (Griffin), and Fairfield 2000 Homes Corporation. The issue on appeal is whether the trial court properly sustained the plaintiffs' appeal from the planning commission's denial of the plaintiffs' subdivision application relating to the construction of an affordable housing development within the meaning of General Statutes (Rev. to 1999) § 8-30g, as amended by Public Acts 1999, No. 99-261, and by the portions of Public Acts 2000, No. 00-206, that have been determined to be retroactive.[1] We reverse the judgment of the trial court.

---

[1] General Statutes (Rev. to 1999) § 8-30g, as amended by Public Acts 1999, No. 99-261, provides in relevant part: "(a) As used in this section: (1) 'Affordable housing development' means a proposed housing development (A) which is assisted housing or (B) in which not less than twenty-five per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that, for at least thirty years after the

The record reveals the following relevant procedural history and facts. River Bend Associates, Inc., a wholly

initial occupation of the proposed development, (i) such dwelling units shall be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a. Of the dwelling units conveyed by deeds containing covenants or restrictions, a number of dwelling units equal to not less than ten per cent of all dwelling units in the development shall be sold or rented to persons and families whose income is less than or equal to sixty per cent of the area median income or sixty per cent of the state median income, whichever is less, and the remainder of the dwelling units conveyed by deeds containing covenants or restrictions shall be sold or rented to persons and families whose income is less than or equal to eighty per cent of the area median income or eighty per cent of the state median income, whichever is less; (2) 'affordable housing application' means any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing; (3) 'assisted housing' means housing which is receiving, or will receive, financial assistance under any governmental program for the construction or substantial rehabilitation of low and moderate income housing, and any housing occupied by persons receiving rental assistance under chapter 319uu or Section 1437f of Title 42 of the United States Code; (4) 'commission' means a zoning commission, planning commission, planning and zoning commission, zoning board of appeals or municipal agency exercising zoning or planning authority; and (5) 'municipality' means any town, city or borough, whether consolidated or unconsolidated.

"(b) Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, specified in subparagraph (B) of subdivision (1) of subsection (a) of this section, contained in the affordable housing development, may appeal such decision pursuant to the procedures of this section. Such appeal shall be filed within the time period for filing appeals as set forth in sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable, and shall be made returnable to the superior court for the judicial district where the real property which is the subject of the application is located. Affordable housing appeals, including pretrial motions, shall be heard by a judge assigned by the Chief Court Administrator to hear such appeals. To the extent practicable, efforts shall be made to assign such cases to a small number of judges, sitting in geographically diverse parts of the state, so that a consistent body of expertise can be developed. Unless otherwise ordered by the Chief Court Administrator, such appeals, including pretrial motions, shall be heard by such assigned judges in the judicial district in which such judge is sitting. Appeals taken pursuant to this subsection shall be privileged cases to be heard by the court as soon after the return day as is practicable. Except as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable. . . .

"(d) Following a decision by a commission to reject an affordable housing application or to approve an application with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, the

owned subsidiary of Griffin, is the owner of a 363 acre property in Simsbury (property). The property, portions

applicant may, within the period for filing an appeal of such decision, submit to the commission a proposed modification of its proposal responding to some or all of the objections or restrictions articulated by the commission, which shall be treated as an amendment to the original proposal. The filing of such a proposed modification shall stay the period for filing an appeal from the decision of the commission on the original application. The commission may hold a public hearing and shall render a decision on the proposed modification within forty-five days of the receipt of such proposed modification. The commission shall issue notice of its decision as provided by law. Failure of the commission to render a decision within said forty-five days shall constitute a rejection of the proposed modification. Within the time period for filing an appeal on the proposed modification as set forth in sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable, the applicant may appeal the commission's decision on the original application and the proposed modification in the manner set forth in this section. Nothing in this subsection shall be construed to limit the right of an applicant to appeal the original decision of the commission in the manner set forth in this section without submitting a proposed modification or to limit the issues which may be raised in any appeal under this section. . . .

"(f) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, the affordable housing appeals procedure established under this section shall not be available if the real property which is the subject of the application is located in a municipality in which at least ten per cent of all dwelling units in the municipality are (1) assisted housing or (2) currently financed by Connecticut Housing Finance Authority mortgages or (3) subject to deeds containing covenants or restrictions which require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income. . . ."

Public Acts 2000, No. 00-206 (1) (g) is codified at General Statutes § 8-30g (g), which provides: "Upon an appeal taken under subsection (f) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission, that (1) (A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development, or (2) (A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses, and (B) the development is not assisted housing, as defined in subsection (a) of this section. If the commission does not satisfy its burden of proof under

of which were used for many years to grow tobacco, is bounded by Hoskins Road on the south, County Road on the northeast and Holcomb Road on the northwest, with Firetown Road and Barndoor Hills Road running through its southwest corner. On November 10, 1999, the plaintiffs, pursuant to General Statutes § 8-26,[2] submitted to the planning commission a subdivision application in which they proposed to subdivide the property into seventy-eight lots, with the remaining acreage to

this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." This portion of Public Act 00-206 was determined to be retroactive in *Quarry Knoll II Corp.* v. *Planning & Zoning Commission,* 256 Conn. 674, 780 A.2d 1 (2001).

For convenience, all references in this opinion to subsections (a), (b), (d) and (f) of § 8-30g are to the 1999 revision of the statutes as amended by Public Acts 1999, No. 99-261. All references to § 8-30g (g) are to the current version of the statute.

[2] General Statutes § 8-26 provides in relevant part: "All plans for subdivisions and resubdivisions, including subdivisions and resubdivisions in existence but which were not submitted to the commission for required approval, whether or not shown on an existing map or plan or whether or not conveyances have been made of any of the property included in such subdivisions or resubdivisions, shall be submitted to the commission with an application in the form to be prescribed by it. . . . The commission may hold a public hearing regarding any subdivision proposal if, in its judgment, the specific circumstances require such action. . . . The commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith, including existing subdivisions or resubdivisions made in violation of this section, within the period of time permitted under section 8-26d. . . . The grounds for its action shall be stated in the records of the commission. . . . If an application involves land regulated as an inland wetland or watercourse under the provisions of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for the subdivision or resubdivision. The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the commission shall give due consideration to the report of the inland wetlands agency. . . . The provisions of this section shall apply to any municipality which exercises planning power pursuant to any special act."

Section 8-26 was amended by Public Acts 2003, No. 03-177, § 7, for purposes not relevant to this appeal. For convenience, we refer to the current version of the statute.

be held in common interest ownership. In support of their application, the plaintiffs submitted a master site plan for the property in which they proposed to construct 640 residential units comprised of a mix of single-family residences on subdivided lots of 40,000 to 60,000 square feet, smaller single-family residences in clusters, smaller residences intended for homeowners without children, and attached two-family and three-family residences. At the same time, the plaintiffs submitted to the town zoning commission an application for site plan approval and for amendments to the town zoning regulations to create a new housing opportunity development district (text amendment) and to the town zoning map to indicate that the property constituted such a district (map amendment). The plaintiffs submitted with their applications an affordability plan indicating that the development plan met the criteria for an affordable housing development set forth in § 8-30g (a) (1) because 15 percent of the units would be affordable for thirty years to families earning 80 percent or less of the area median income for greater Hartford and 10 percent of the units would be affordable to families earning 60 percent or less of the area median income. The plaintiffs also submitted an affordable housing analysis prepared by John Scott of Scott, Kenney Partners. The analysis indicated that because, in 1998, only 3.03 percent of the town's housing units qualified as affordable, the planning commission's decision would not be exempt from the appeal procedures provided by § 8-30g. See General Statutes (Rev. to 1999) § 8-30g (f) (statute's appeal procedures not available if property is located in municipality in which 10 percent of properties meet specified criteria). Simultaneously with their applications to the planning and zoning commissions, the plaintiffs also submitted an application to the conservation and inland wetlands commission of the town of Simsbury (conservation commission) for a regulated

activities permit and an application to the water pollution control authority of the town of Simsbury for the transfer of a sewage disposal allocation from an adjacent industrial zoned property owned by Griffin to the proposed development. Ultimately, all of the applications were denied.

In May, 2000, the plaintiffs submitted a revised subdivision application to the planning commission pursuant to § 8-30g (d). The revised application reduced the total number of residences to 371, including 102 residences on subdivided lots, 79 residences designed for homeowners without children, and 190 smaller single-family residences in clusters, 93 of which would be sold at affordable prices as provided by § 8-30g. All residences except those on the subdivided lots would be part of a common interest ownership community pursuant to General Statutes § 47-200 et seq. The plaintiffs again submitted an affordability plan indicating that the development met the criteria for an affordable housing development. The plaintiffs also submitted revised applications to the zoning commission and to the conservation commission. In addition, they applied to the water pollution control authority for sewer connections for the 269 common interest ownership residences and to the Farmington Valley health district (health district) for approval of septic systems for the 102 homes on subdivided lots, 55 of which were within the sewer service district. The defendant North Simsbury Coalition, Inc. (coalition), intervened in the application proceedings pursuant to General Statutes § 22a-19,[3] which

---

[3] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

authorizes intervention into any proceeding by any person or organization upon the allegation that the proceeding involves conduct reasonably likely to cause unreasonable pollution.

On June 13, 2000, David Knauf, the assistant director of health for the health district, wrote to William Voelker, the director of community planning and development for the town, indicating that soil conditions at the site were suitable for the installation of septic systems, with the exception of two lots. He also indicated that the health district had concerns about the soil mixing plan and protection of the aquifer. On June 28, 2000, the water pollution control authority voted to deny the sewer connections on the ground that fifty-five of the residences with septic systems were located within the sewer service area and, if any of the septic systems failed, connection to the sewer system would be required.[4] The authority deemed the proposal an attempt to bypass the sewage allocation limits. See *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, 262 Conn. 84, 91 n.7, 809 A.2d 492 (2002). The authority also stated, however, that "[t]he 110,000 gallon allocation is, and will remain, available and the [authority] is inclined to approve any application that utilizes up to this allocation."

On June 29, 2000, the planning commission, together with the zoning commission, held a joint public hearing on the revised development proposal. A major topic of concern at the hearing was, as it had been throughout the application proceedings, the existence of residual pesticides in the soil on the portions of the property

---

[4] The authority's denial of the plaintiffs' application for sewer connections was the subject of a separate declaratory judgment action by the plaintiffs. This court ultimately affirmed the dismissal of that action because the plaintiffs had failed to exhaust their administrative remedies. See *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, 262 Conn. 84, 809 A.2d 492 (2002).

that had been used to grow tobacco and the adequacy of the plaintiffs' plan to remediate the contamination.[5] On July 17, 2000, the zoning commission passed a motion denying the zoning amendments.[6] On July 19, 2000, the conservation commission denied the plaintiffs' revised application for a regulated activities permit.[7] On July 25, 2000, the planning commission passed a motion denying the plaintiffs' revised submission. The planning commission stated as reasons for its denial that: (1) the subdivision application called for more residential units and more sewer capacity than permitted under existing regulations and the zoning commission had denied the applications to change the zoning regulations and zoning map; (2) the water pollution control authority had denied the plaintiffs' application for sewer service; (3) the conservation commission had denied the plaintiffs' application for a wetlands permit; (4) the proposed soil remediation plan was inadequate

[5] The soil contamination issue is discussed in greater detail in the companion case of *River Bend Associates, Inc.* v. *Zoning Commission*, 271 Conn. 1, 31–33, 856 A.2d 973 (2004).

[6] The zoning commission's denial of the zoning amendments is the subject of the companion case of *River Bend Associates, Inc.* v. *Zoning Commission*, 271 Conn. 1, 856 A.2d 973 (2004), which was released on the same date as this opinion. We concluded in that case that the trial court properly had sustained the plaintiffs' appeal from the zoning commission's decision relating to the proposed text amendment and map amendment. Id., 3–4. We also concluded that, in light of our holding in the present case that the trial court improperly sustained the plaintiffs' appeal from the planning commission's denial of the subdivision application, the plaintiffs' appeal from the zoning commission's denial of the site plan application was moot because the site plan application was based on the subdivision plan. Id., 19. Once the planning commission had denied the subdivision plan, the zoning commission could not be ordered to approve the site plan because there was no reasonable probability that the subdivision plan on which the site plan was premised would be approved. Id.

[7] The conservation commission's denial of the wetlands permit was the subject of the plaintiffs' appeal in *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 848 A.2d 395 (2004). We concluded in that case that the trial court improperly had dismissed the plaintiffs' appeal from the denial of the wetlands permit and remanded the case to the trial court for further consideration of the plaintiffs' appeal.

and an unacceptable risk to public health and safety; (5) reasonable changes could not be made to the subdivision plan until the water pollution control authority granted a sewer allocation transfer; and (6) reasonable changes could not be made to the plan to remediate the soil or to address the conservation commission's concerns. With respect to the coalition's intervention petition, the planning commission found that the plaintiffs' proposed development would have, or was reasonably likely to have, "the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state; and . . . there [were] feasible and prudent alternatives consistent with reasonable requirements of the public health, safety and welfare and preservation of the public trust [in] air, water and other natural resources of the state."

The plaintiffs appealed to the Superior Court from the planning commission's denial of the subdivision application pursuant to § 8-30g (g). The trial court sustained the appeal, concluding that "the overarching flaw in [the planning commission's] treatment of this subdivision application is its failure genuinely to weigh [the town's] need for affordable housing against the various defects it found in the application and in the overall development, and to prove that the latter 'clearly outweigh' the former." The trial court also concluded that: (1) the planning commission's denials of the text amendment and the map amendment were not valid reasons for denying the subdivision because, under *Wisniowski* v. *Planning Commission*, 37 Conn. App. 303, 655 A.2d 1146, cert. denied, 232 Conn. 909, 658 A.2d 981 (1995), an affordable housing subdivision is not required to comply with existing zoning regulations; (2) the denials by the water pollution control authority and the conservation commission of the plaintiffs' applications to those agencies were not valid reasons for denying the subdivision application because the agen-

cies' actions were likely to be the subject of further litigation; and (3) the planning commission had failed to establish anything more than a mere possibility that the soil contamination would result in harm to the public health if the subdivision application were granted.

With respect to the planning commission's finding on the coalition's intervention pursuant to § 22a-19, the court found that the planning commission had not met its burden of proving that "unreasonable pollution was reasonably likely" if the site plan was approved. The court also concluded that § 22a-19 did not exempt the planning commission from its burden of proving that the development would harm a substantial public interest under § 8-30g.

The trial court concluded that the planning commission had failed to meet its burden under § 8-30g (g) of proving that denial of the subdivision application was necessary to protect a substantial public interest and ordered the planning commission to approve the plaintiffs' subdivision application subject to the following conditions: (1) if the plaintiffs' appeal from the water pollution control authority's denial of the sewer application was denied, the plaintiffs would be required to modify the site plan to conform to the decision;[8] (2) if the plaintiffs' appeal from the conservation commission's denial of the regulated activity permit was denied and the decision affected the site plan, the plaintiffs would be required to modify the plan to conform to that decision; (3) postremediation soil sampling and

---

[8] We interpret the trial court's order to mean that the planning commission would be required to approve the subdivision plan subject to approval by the water pollution control authority and that, if the authority's denial of the application ultimately was upheld, the plaintiffs would be required to modify the subdivision plan and resubmit it to the planning commission for approval. The plaintiffs do not claim that the trial court intended, or had the authority, to order the planning commission to approve, a priori, a modified plan that was not yet in existence.

groundwater monitoring would have to establish that remediation standard regulations had been met; and (4) the property would have to be in compliance with all applicable remediation standard regulations before construction could begin. The planning commission, on the granting of certification, appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The planning commission claims on appeal that the trial court improperly determined that: (1) the planning commission had not acknowledged the town's need for affordable housing in reaching its decision; (2) the denial of the zoning amendments by the zoning commission was not a valid reason to deny the subdivision application when the plaintiffs voluntarily had tied the subdivision application to the zoning amendments; (3) the planning commission had authority to approve the subdivision application conditionally when the plaintiffs' sewer application and wetlands permit had been denied; and (4) there was no evidence to support the planning commission's conclusion that the soil contamination posed a threat to the public health. The planning commission also makes a number of related subsidiary claims.

We note that the planning commission's second claim is moot in light of our decision in the companion case of *River Bend Associates, Inc.* v. *Zoning Commission*, 271 Conn. 1, 856 A.2d 973 (2004), released on the same date as this opinion, in which we concluded that the zoning commission improperly denied the plaintiffs' zoning amendments. In that case, we also resolved claims substantially identical to the planning commission's first and fourth claims in the present case. Specifically, we concluded that: (1) to the extent that the trial court suggested that the zoning commission was required to acknowledge expressly the town's need for

affordable housing, any such suggestion was improper but harmless; and (2) the trial court properly found that the soil contamination was not a valid reason for denying the plaintiffs' zoning amendment applications. We adopt the reasoning and holdings of that case herein. Accordingly, we need address only the planning commission's third claim relating to the denial of the sewer application. We conclude that the trial court improperly determined that the water pollution control authority's denial of the plaintiffs' sewer application was not a valid reason for the planning commission's denial of the subdivision application. Because this issue is dispositive, we need not address the commission's claim relating to the denial of the regulated activities permit.[9]

Before addressing the merits of the planning commission's claim, it is helpful to clarify what is *not* in issue here. The plaintiffs argue that the record establishes unequivocally that there is adequate sewage capacity to dispose of the sewage from each of the subdivided lots and, therefore, that the water pollution control authority's denial of their sewer application did not constitute a public interest warranting denial of the subdivision application under § 8-30g (g). They further suggest that we may consider the merits of the authority's ruling in the present case because "the trial court was acting under § 8-30g, granting relief to effectuate the remedial purposes of the statute, it was not approving a traditional subdivision," and § 8-30g (f) "makes specific reference to all land use agencies dealing with affordable housing applications imposing conditions."

We disagree with the plaintiffs' suggestion that the merits of the water pollution control authority's denial of their sewer application are at issue in this appeal.

---

[9] As we have noted, the conservation commission's denial of the regulated activities permit was the subject of the plaintiffs' appeal in *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 848 A.2d 395 (2004). See footnote 7 of this opinion.

First, the plaintiffs did not appeal from that decision.[10] Nothing in § 8-30g suggests that the statute may be used as a vehicle for mounting a collateral attack on the merits of a coordinate agency's decision from which there has been no appeal.[11] Second, we recently concluded that the provisions of § 8-30g do not apply to the decisions of water pollution control authorities. See *AvalonBay Communities, Inc.* v. *Sewer Commission,* 270 Conn. 409, 431–33, 853 A.2d 497 (2004). Thus, even if the plaintiffs had appealed from the decision of the water pollution control authority, the special rules pertaining to affordable housing appeals would not apply to that appeal.

Accordingly, we conclude that only the following issues are before us in this appeal. We must first determine whether the planning commission had authority under § 8-26 to grant approval of the plaintiffs' subdivision application conditioned on their obtaining approval of the sewer application. We conclude that the planning commission had no such authority. We then must determine whether, in the absence of such authority, the planning commission was required under

[10] As we have noted, the water pollution control authority's decision was the subject of a separate declaratory judgment action by the plaintiffs that was dismissed under the exhaustion doctrine. This court ultimately affirmed that decision. See footnote 4 of this opinion.

[11] We note that the complete record of the proceedings before the water pollution control authority is not part of the return of record in the present case and that the authority is not a party to this appeal. Accordingly, as a practical matter, neither the trial court nor this court has any basis on which to evaluate the authority's decision and, as a legal matter, we have no jurisdiction over the authority to order it to do anything. As we discuss more fully later in this opinion, we also have no authority to order the planning commission to approve the subdivision plan in light of the authority's denial of the sewer application. Cf. *Thoma* v. *Planning & Zoning Commission,* 31 Conn. App. 643, 626 A.2d 809 (1993) (planning and zoning commission may approve subdivision application despite disapproval of subdivision plan by wetlands commission), aff'd, 229 Conn. 325, 640 A.2d 1006 (1994) (per curiam).

§§ 8-26 or 8-30g to approve the application without conditions. We conclude that it was not.

We begin our analysis by setting forth the standard of review. The scope of the planning commission's authority to grant a conditional approval of a subdivision application under §§ 8-26 and 8-30g is a question of statutory interpretation over which our review is plenary. See *Gay* v. *Gay*, 266 Conn. 641, 646, 835 A.2d 1 (2003).

The planning commission relies on *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 409 A.2d 1029 (1979), in support of its claim that it had no authority to condition the approval of the subdivision on the granting of the plaintiffs' sewer application. In *Carpenter*, the defendant property owners submitted a subdivision application to the defendant planning and zoning commission, which approved the application subject to approval of the town highway superintendent and the posting of a bond. Id., 584. The property owners then brought an action seeking a writ of mandamus to compel the planning and zoning commission to issue a certificate of approval based on its alleged failure to act on the application. The trial court ordered the planning and zoning commission to issue the certificate. Id., 585. The plaintiffs[12] appealed from that decision (first case). They also filed a separate action seeking an injunction against the subdivision. The defendants filed pleas in abatement in both cases claiming, inter alia, that the planning and zoning commission's failure to act on the subdivision plan had resulted in an

---

[12] It appears that the plaintiffs in *Carpenter* were the named plaintiff, Bruce R. Carpenter, and owners and occupants of nearby premises. It is not clear from the opinion what standing they had to challenge the planning and zoning commission's ruling. *Carpenter* v. *Planning & Zoning Commission*, supra, 176 Conn. 584 n.1.

" 'inferred approval' " pursuant to § 8-26.[13] Id., 586–87. The pleas in abatement in both cases were granted on procedural grounds. Id., 586. In its ruling on the first case, the trial court concluded that the planning and zoning commission's ruling had amounted to an inferred approval. Id., 592. The plaintiffs appealed from both rulings to this court.

On appeal, we concluded that the trial court properly had determined that the planning and zoning commission's conditional approval of the subdivision application constituted a failure to take action resulting in an inferred approval. Id., 593. Relying on *Stiles* v. *Town Council*, 159 Conn. 212, 221, 268 A.2d 395 (1970), in which we had concluded that "commission action which is dependent for its proper functioning on action by other agencies over which the zoning commission has no control cannot be sustained unless the necessary action appears to be a probability";[14] *Carpenter* v. *Planning & Zoning Commission*, supra, 176 Conn. 592; we concluded that "an 'approval' subject to a condition, the fulfillment of which is not within the control of the applicant, or in which an approval by a coordinate agency is not shown to be a reasonable probability, is not an 'approval' within § 8-26 of the General Statutes, and such an approval is thus a 'failure to act' within the meaning of that statute." Id., 597.

In the present case, the planning commission argues that, under *Carpenter*, it had no authority to approve

[13] Under § 8-26, "[t]he failure of the commission to act [on a subdivision application] shall be considered as an approval . . . ."

[14] We also stated that "[n]othing in the subdivision approval statute, § 8-26, allows for the imposition of conditions upon the planning and zoning commission's approval of a subdivision plan; the statute merely provides for the commission to 'approve, modify and approve, or disapprove' a subdivision application." *Carpenter* v. *Planning & Zoning Commission*, supra, 176 Conn. 592. In light of our ultimate conclusion in *Carpenter* that a planning and zoning commission has authority to impose a condition on a subdivision approval if the fulfillment of that condition is a reasonable probability, it is clear that we did not intend this language to suggest that the commission has *no* authority to impose conditions on a subdivision approval.

the plaintiffs' subdivision application subject to the granting of their sewer application because, in light of the water pollution control authority's previous denial of the application, there was no "reasonable probability" that the application would be granted. The plaintiffs counter that the trial court properly concluded that the authority's denial of the sewer application was not final because that denial was likely to be, and indeed became, the subject of ongoing litigation. See *River Bend Associates, Inc.* v. *Water Pollution Control Authority,* supra, 262 Conn. 84. Therefore, they argue, the planning commission could have approved the subdivision subject to reversal of the authority's denial of the sewer application.

We agree with the planning commission. We stated in *Carpenter* that the rule that a commission cannot impose conditions on a subdivision approval that are unlikely to be fulfilled "is particularly appropriate in cases where the condition imposed cannot be fulfilled by the action of the applicant, but must wait for an undetermined time for the approval of a coordinate municipal agency. The legislative purpose behind General Statutes §§ 8-26 and 8-28, to secure, in the public interest, by means of rather brief appeal time periods, a speedy determination of the issues involved . . . will best be facilitated if subdivision applicants know with certainty that a definite course of statutory action has been taken by a commission, setting in motion clear avenues of appeal." (Citation omitted.) *Carpenter* v. *Planning & Zoning Commission,* supra, 176 Conn. 596–97. We also stated that "[w]e do not construe the imposition of conditions on a commission's 'approval' of a subdivision plan to be an 'approval and modification' within § 8-26 if those conditions cannot be fulfilled by the commission or subdivision applicant within a reasonable time." Id., 593 n.7.

Accordingly, we conclude that the planning commission was entitled to rely on the water pollution control authority's denial of the sewer application in concluding that there was no reasonable probability that the plaintiffs could obtain approval of the sewer application within a reasonable time. Both the time required for completion of an administrative appeal and the result of such an appeal are inherently unpredictable. In the present case, for example, the plaintiffs' subdivision application was denied in July, 2000. As of the date of oral argument before this court in the present case, the plaintiffs still had not obtained approval of their sewer application. The plaintiffs do not deny this fact, but argue that the authority's denial of their sewer application merely "created a legal obstacle to the actual construction" of the subdivision as designed. They do not state how or when they plan to overcome that obstacle, however. Nor do they make any claim that the approval of the sewer application for the subdivision plan, as submitted to the planning commission, is reasonably probable. Accordingly, we conclude that the planning commission had no authority to grant the plaintiffs' subdivision application on the condition that it obtain approval of its sewer application.

The plaintiffs argue, however, that this result is precluded by our decision in *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 164, 653 A.2d 798 (1995), in which we stated that the zoning commission was not merely authorized, but was required to approve a zone change for an affordable housing development conditioned on obtaining the approval of coordinate agencies. In *Kaufman*, the defendant zoning commission argued that it could not grant a zone change on the condition that the plaintiff developer obtain approval from the planning commission for certain road improvements. Id., 162. In support of its argument, the zoning commission relied on *Faubel* v. *Zoning Commission*, 154 Conn. 202, 224

A.2d 538 (1966). In *Faubel,* which did not involve affordable housing, the defendant zoning commission had approved a zoning amendment over the objections of the planning commission. Id., 208. The record established that the existing roads were inadequate to accommodate the expected traffic in the new zone and that road improvements could not be made without the approval of the planning commission. Id., 210. This court stated that, "[i]n light of the expressed opposition of the town plan commission to the rezoning of the area, its approval of measures to implement that rezoning cannot be assumed to be a probability." Id. We concluded that "a change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless . . . the necessary action appears to be a probability." Id., 211.

In *Kaufman,* we stated that our holding in *Faubel* "reflects the policy concern that, in the face of evidence of impending harm to the public interest, zoning commissions should not grant zone changes without assurances, in the record, that preventive steps will be taken to minimize the risk of harm." *Kaufman* v. *Zoning Commission,* supra, 232 Conn. 163. We further stated that those concerns did not arise under the circumstances of *Kaufman* because the zoning commission was empowered to impose a condition that would protect against the risk of harm. This was so even though there was no evidence that the planning commission would approve the new roads. Id. We concluded that, "[i]n the context of an application to build affordable housing . . . the conditional granting of a zone change was not only authorized but required." Id., 164. In other words, we determined that, in the affordable housing context, approval of necessary applications by coordinate municipal agencies should be presumed to be a

probability in the absence of any evidence to the contrary.

We conclude that the present case is more like *Faubel* than *Kaufman*. Although there was no evidence in *Kaufman* that the planning commission would approve an application for new roads, there was also no evidence that the planning commission would deny such an application. In both *Faubel* and the present case, there was strong evidence that the respective applications would not be approved; indeed, in the present case, the application already had been denied. Moreover, unlike in *Kaufman*, where the planning commission's review of road improvements was subject to the affordable housing provisions, making approval more likely, the water pollution control authority's review of the subdivision plan in the present case is not subject to those provisions. See *AvalonBay Communities, Inc. v. Sewer Commission*, supra, 270 Conn. 431–33. Accordingly, we reject the plaintiffs' claim that our conclusion in the present case is inconsistent with *Kaufman*.

The plaintiffs also rely on *Thoma v. Planning & Zoning Commission*, 31 Conn. App. 643, 626 A.2d 809 (1993), aff'd, 229 Conn. 325, 640 A.2d 1006 (1994) (per curiam), in support of their argument that the denial of an application by a coordinate municipal agency is not a valid reason to deny a subdivision application. In that case, the defendant developers submitted a subdivision application to the defendant planning and zoning commission. The subject property contained wetland areas, but the subdivision plan did not propose any regulated activities within the wetlands for which a permit from the local inland wetlands agency would be required under the relevant statutes. Id., 645. The developers were required, however, to submit the application to the inland wetlands agency pursuant to § 8-26. The wetlands agency concluded that the proposed

subdivision would have an adverse effect on the wet-lands and did not grant approval of the subdivision plan. Id. Nevertheless, the planning and zoning commission approved the subdivision. Id.

The plaintiffs, abutting landowners, appealed from the planning and zoning commission's approval of the subdivision, relying on a zoning regulation of the town of Canterbury that prohibited the approval of subdivision applications in the absence of a determination by the wetlands agency that the subdivision would not adversely affect any wetlands area. Id., 645–46. In contrast, § 8-26 provides that a commission "shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the commission shall give due consideration to the report of the inland wetlands agency." (Internal quotation marks omitted.) Id., 646. The trial court concluded that the zoning regulation and § 8-26 were consistent with each other and sustained the plaintiffs' appeal on the ground that the planning and zoning commission had violated the zoning regulation. Id., 647. The planning and zoning commission then appealed to the Appellate Court. The Appellate Court determined that the zoning regulation effectively gave the wetlands agency veto power over any proposed subdivision application thereby undermining the provision of § 8-26 that a commission need only give "due consideration" to the agency's report. Id., 648, 651. It concluded that the regulation was an impermissible delegation of authority from the planning and zoning commission to the wetlands agency. Id., 651. Accordingly, the court reversed the judgment of the trial court. Id., 652.

The plaintiffs in the present case argue that to allow the planning commission to deny its subdivision application on the ground that the water pollution control authority had denied its sewer application would be to give veto power to the authority in contravention of

*Thoma.* We do not agree that *Thoma* controls this case. The Appellate Court's holding that the wetlands agency could not be given veto power over a subdivision application was grounded in the statutory provision that a commission need only give "due consideration" to the agency's report and decision. See General Statutes § 8-26. That provision recognizes that, as a practical matter, a wetlands agency's determination that the construction of a subdivision would have an adverse effect on the wetlands does not necessarily render the subdivision infeasible. A commission could determine, for example, that the subdivision application should be modified to avoid any such adverse effect. Moreover, the statutory provision vests discretion in the commission to determine that, even if the adverse effects cannot be avoided, they do not justify denial of the subdivision. Thus, the statute effectively gives the commission discretionary authority to contravene the agency's decisions. Again, this makes sense in light of the fact that the risk of damage to wetland areas does not necessarily render a subdivision plan practically infeasible, but may merely present a public policy concern.

These considerations do not exist in the present case. The planning commission has no statutory authority to contravene the decisions of the water pollution control authority. Nor is there any claim in this case that sewage disposal could be accomplished without the authority's consent or that the construction of the subdivision as submitted would be feasible without sewer access.[15]

---

[15] The sole basis for the water pollution control authority's denial of the sewer applications was the inclusion of fifty-five units with septic systems within the sewer district. The authority indicated that a 110,000 gallon allocation was available and that it would be inclined to approve any application using up to that allocation. Accordingly, it may be that the planning commission could have granted approval of the subdivision plan conditioned on the removal of the fifty-five units from the plan. The plaintiffs never sought such a reduction from the planning commission after the water pollution control authority issued its denial.

The plaintiffs claim only that the planning commission was required to approve their subdivision plan even though there was a significant likelihood that the plan could not be implemented. Nothing in § 8-26 imposes such a requirement. Nor does § 8-30g compel a different result. As we have noted, the issue of whether the town's need for affordable housing outweighed the water pollution control authority's concerns over the proposed sewer connection simply is not before us.

The plaintiffs further argue that permitting the planning commission to deny their application on the basis of the authority's denial of their sewer application instead of approving it conditionally would be inconsistent with the Appellate Court's decision in *National Associated Properties* v. *Planning & Zoning Commission*, 37 Conn. App. 788, 658 A.2d 114, cert. denied, 234 Conn. 915, 660 A.2d 356 (1995). In that case, the defendant planning and zoning commission argued that it could not approve the plaintiff's application for a zoning change pursuant to § 8-30g because the plaintiff had not obtained approval from the authority prior to seeking the zone change. Id., 800. The Appellate Court rejected the claim, stating that § 8-30g "does not list any order in which these applications must be brought and we will not read into the statute a requirement that a zone change application cannot be approved without prior approval from the [authority]." Id.

In the present case, the plaintiffs argue that this case stands for the proposition that applications relating to an affordable housing subdivision need not be approved in any particular order. It further argues that requiring an applicant to obtain approvals from coordinate municipal agencies before seeking approval from the planning commission would be "simply unworkable" because, as the present case shows, obtaining such approvals may take years. We agree with the plaintiffs that applications to coordinate agencies need not be

*approved* before an applicant submits a subdivision plan to the planning commission. If a critical application is *denied* before the planning commission acts on the plan, however, the planning commission, for all of the foregoing reasons, must take that denial into account in making its decision.

We also are not persuaded by the plaintiffs' argument that it is "simply unworkable" for the planning commission to withhold approval of the subdivision plan indefinitely until disputes over denied applications have been finally resolved. First, we note that any such approval of the plaintiffs' application necessarily would have to have been conditional. The very purpose of the rule disfavoring conditional approvals of subdivision applications in the absence of a reasonable probability that the condition can be fulfilled within a reasonable time period is to avoid placing subdivision applications in limbo for indefinite periods. See *Carpenter* v. *Planning & Zoning Commission*, supra, 176 Conn. 596–97. Second, even if conditional approval of their subdivision plan had been authorized, the plaintiffs would have been required to wait until their dispute with the water pollution control authority was resolved to implement the subdivision plan. The only consequence of the denial is that, once the sewer dispute is resolved, the plaintiffs must resubmit to the planning commission either the current subdivision application or a modified plan. We trust that the commission will take notice of our decisions in the present case and in the companion case of *River Bend Associates, Inc.* v. *Zoning Commission*, supra, 271 Conn. 1, and conduct its review of the application accordingly. We do not believe that this course imposes any undue inconvenience or delay on the plaintiffs.

We have concluded, in accordance with *Carpenter* v. *Planning & Zoning Commission*, supra, 176 Conn. 581, that the planning commission had no authority to

approve the plaintiffs' subdivision plan on the condition that the plaintiffs obtain approval of their sewer application. It is clear from the foregoing analysis that the planning commission also was not required to approve the subdivision plan without conditions when there was a substantial likelihood that the plan could not be implemented. Cf. *Faubel* v. *Zoning Commission*, supra, 154 Conn. 211 (in absence of reasonable assurance that provision can be made for necessary utilities, zoning commission's approval of zone change had "succeeded only in setting apart a portion of the town . . . for a use which could not be made of it" and trial court properly sustained appeal from zoning commission's action). Accordingly, we conclude that the trial court's order to the planning commission that it approve the plaintiffs' subdivision application on the condition that, "[i]f the administrative and legal proceedings concerning the action of the water pollution control authority result in a final judgment upholding that action, the subdivision plan must be modified to conform to that decision," was improper.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment dismissing the plaintiffs' appeal.

In this opinion the other justices concurred.